WORSHAM BUICK COMPANY V. MRS. METTIE K. ISAACS ET AL.

No. 5896.   Decided June 9, 1932.
(51 S. W., 2d Series, 277.)

*Touchstone, Wight, Gormley & Price,* of Dallas, for appellant.

Worsham Buick Company was entitled to an instructed verdict in its favor where the evidence showed that the car in question was being driven by one Al Simpson, an employe in the service department, on a certain Sunday when he was off duty and where the evidence further showed that at the time of the accident Simpson was not engaged in the discharge of any duty for Worsham Buick Company, but on the contrary was driving said car to a picnic solely for his own pleasure. McCoy v. Beach-Wittman Co., 22 S. W. (2d) 714; Cole v. Wright, 18 S. W. (2d) 242; Rew v. Stoddard, 225 S. W., 836; Van Cleave v. Walker, 210 S. W., 767; Gordon v. Texas & Pac. Mer. & Mfg. Co., 190 S. W., 748.

There is no rule of law or morals that would make anybody liable for damages unless the acts with which they were charged had some casual connection with the damages in question.   Aetna Ins. Co. v. Mills, 3 S. W. (2d) 999; Moore v.

Hart, 171 Ky., 714, 188 S. W., 861; Black v. Moree, 155 Tenn., 73, 185 S. W., 682; Mumme v. Sutherland, 198 S. W., 395.

*Chamberlain, Green & Wade,* of Dallas, for appellees.

Where it is admitted that the defendant is a dealer in automobiles, and as such accepts the benefits of Article 6686, as amended by the Acts of 1927, 40th Legislature, p. 296, and under the provisions of such statute it secures a dealer's number and places such number on its new automobiles and then places one of said new automobiles in the possession of its service superintendent with the knowledge that he is going to operate the same on the public streets, such defendant is estopped, and cannot be heard to say that such service superintendent was not its agent or was not demonstrating such automobile for the purpose of sale while it was being operated by him on the public streets; and where such service superintendent negligently operated the same on the public streets and as the result of such negligent operation, the husband and father of the plaintiffs was killed, it is liable to pay damages under the Death Injury Statutes of this State.

And should it be held that defendant is not estopped to deny agency or that such automobile was being operated for the purpose of demonstrating for sale, under circumstances herein detailed, then it violated said law, and the Penal Code of Texas in permitting its service superintendent to take and use a new automobile owned by it, and on which was displayed its dealer's license plate, knowing that its service superintendent was going to operate same on the public streets, it was guilty of negligence, as a matter of law, in letting him have and permitting him to operate the automobile in violation of law, and such negligence was the proximate cause of the death of plaintiff's decedent. R. S., 1925, Art. 6686; Cargill v. Duffy, 123 Fed., 721; Brown v. Chevrolet Motor Co., 39 Calif. App., 738, 179 Pac., 697; McCarthy v. Valdez, 10 S. W. (2d) 1051.

MR. JUDGE HARVEY of the Commission of Appeals delivered the opinion of the Court.

The Court of Civil Appeals for the Fifth Supreme Judicial District has submitted the following certificate containing certified questions:

"There is pending on submission in the Court of Civil Appeals for the 5th Supreme Judicial District of Texas the following numbered and entitled cause: No. 10740, Worsham

Buick Company, Appellant, vs. Mrs. Mettie K. Isaacs et al., Appellees, in which the judges of this court are unable to agree on questions of law vital to a determination of the rights of the parties, as presented by the appeal of said cause, and owing to the importance of the questions involved to the judicial procedure and to the right of the litigants to said cause, the judges of this court deem it advisable to certify same to the Honorable Supreme Court of Texas.

## "STATEMENT OF THE CASE

"This suit was instituted by appellees, Mrs. Mettie K. Isaacs, and her son, Alfred W. Isaacs, to recover damages for the death of the husband and father, R. W. Isaacs, who was alleged to have been killed on or about Sunday, September 9, 1928, about 3 o'clock P. M. by the negligent operation of an automobile charged to have been driven by an employee of appellant, Worsham Buick Company. For cause of action, appellee plead in effect as follows: that a new automobile owned by appellant and operated by its service superintendent, Allen J. Simpson, while drunk and traveling at a speed in excess of 70 miles per hour through the intersection of two public streets in the City of Dallas, collided with the automobile owned by and in which the deceased Isaacs was riding, inflicting injuries upon said Isaacs causing his death; that appellant was a dealer in automobiles and had accepted the benefits of Article 6686, R. S., 1925, as amended by Acts of the 40th Legislature of 1927, page 286, said Act being in part as follows: 'A dealer within the meaning of this Article means any person, firm or corporation engaged in the business of selling automobiles who runs them upon the public highways or streets for demonstration for the purpose of sale; and this Act shall not be construed as permitting the use of a dealer's license or number plate on any vehicle owned or used by such a dealer for any other purpose than demonstration for the purpose of sale'; that appellant had knowingly entrusted one of its new automobiles, subject to said provision, to said Simpson, who was at the time of said collision operating it on the public streets of the City of Dallas, displaying appellant's general dealer's license number and was so operating said car at the time he ran into the car of and killed said Isaacs. Appellees sought to recover on the following theories: (a) that appellant, as such dealer, having knowingly entrusted said automobile to said Simpson for operating upon the public streets while displaying such dealer's license plate; that Simpson was, as a matter of law, the agent of and operat-

ing such automobile for the use and benefit of said appellant within the scope of his agency, and therefore the negligence of said Simpson in the operation of said automobile was the negligence of appellant; (b) that in permitting said Simpson to operate said automobile on the public streets, displaying such dealer's license plate, appellant violated the law and thereby created a nuisance on the streets by reason of which said Isaacs was killed, and it was thereby liable; (c) that appellant was itself guilty of negligence in permitting said Simpson to operate said automobile in violation of law, and that such negligence was a proximate cause of the accident and resulting death of said Isaacs.

"Appellant's answer included, among other pleas, a general demurrer, general denial, and a special plea, as follows: 'The defendant, Worsham Buick Company, by way of special answer says that at, before and after the occasion complained of in plaintiffs' Second Amended Original Petition, Allen J. Simpson was doing no act, nor was he performing any duty for or on behalf of the Worsham Buick Company; and the defendant further specially denies that it, in any way, ratified or condoned any act of Allen J. Simpson.'

### "DISPOSITION BY THE TRIAL COURT.

"One issue was submitted to the jury—viz. measure of damages—and judgment was rendered on the findings of the jury in response thereto for the sum of $11,500 in favor of Mrs. Mettie K. Isaacs, and for the sum of $500 in favor of Alfred W. Isaacs.

### "FACTS.

"Bearing upon the questions certified, the following facts were established by uncontroverted evidence: that appellant was, and is, a dealer in automobiles and as such had accepted the benefits of Art. 6686, R. S., as amended by Acts 40th Legislature, p. 296, 1927; that the general distinguishing number assigned to it for the year 1928 was D-2-300; that the automobile in question was a new 'Silver Anniversary Model' Buick, then just placed on the market by the Buick manufacturers; that Simpson was the service superintendent of the Worsham Buick Company, the Dallas dealer for the Buick car; that Charles K. Cohn, the general sales manager of appellant, admitted that on September 8, 1928, about 6 o'clock P. M. Simpson asked him for permission to use the automobile that evening and the next day, which was Sunday; that Simpson wanted the

car for his personal use to take his people out and was so using same when the alleged collision occurred; that he told Simpson it would be alright but to take particular care of the car as it was a brand new car and was to be delivered Monday; that it was the same car in the collision and had a dealer's license plate on it numbered D-2-300.

## "QUESTION NO. 1.

"Would the fact that appellant, a dealer in automobiles, had under the provisions of Art. 6686, supra, secured a dealers number and placed same on its new automobiles and delivered one of its automobiles so numbered into the possession of its service superintendent, Simpson, for his own personal use on a Sunday, to be operated by him on the public streets of the City of Dallas, and elsewhere, estop appellant from urging that said service superintendent was not then its agent, or was not demonstrating said automobile for the purpose of sale while it was being operated by said Simpson for his personal use on the public streets of Dallas so as to relieve appellant of and from liability for damages resulting from the negligent operation of said automobile by said Simpson on the public streets of Dallas, resulting in the death of said Isaacs?

## "QUESTION NO. 2.

"Is appellant, as a matter of law, charged with the negligent operation of the car by Simpson, which proximately caused the death of deceased, because of the fact that appellant delivered possession of said car to Simpson with full knowledge as to its contemplated use and for the purpose of its being used by him on public highways in violation of Art. 6686, supra, as specifically set out in Question No. One?"

Article 6686 of the Revised Statutes of 1925, as amended in the year 1927, reads partly as follows:

"Any manufacturer of or dealer in motor vehicles in this State may, instead of registering each vehicle he may wish to show or demonstrate on the public highways, apply for registration and secure a general distinguishing number which may be attached to any motor vehicle or motorcycle which he sends temporarily upon the road. The annual fee for such dealer's registration of a general distinguishing number shall be $15.00, and additional number plates bearing said number desired by any dealer shall be assigned and registered for a fee of $5.00 each. A dealer within the meaning of this Article means any person, firm or corporation engaged in the business of selling

automobiles who runs them upon the public highways or streets for demonstration for the purpose of sale; and this Act shall not be construed as permitting the use of a dealer's license or number plate on any vehicle owned or used by such a dealer for any other purpose than demonstration for the purpose of sale. * * *"

■ Under the above statute, the use of the dealers' license plate on an automobile belonging to the dealer, which automobile is operated on the public highways, except in cases where the vehicle is being operated for demonstration purposes, as there provided, is impliedly prohibited and is, therefore, unlawful. It can hardly be doubted that where the dealer permits his license plate to be used on an automobile in violation of this statute, he creates a situation calculated to mislead third persons into assuming that the automobile is being operated for the dealer, for demonstration purposes. In such a case, if the third person, in reliance on such assumption, is misled into some action which exposes him to injury, the dealer will be estopped to deny that the automobile was being operated by his authorized agent, for demonstration purposes. The conduct of the dealer does not, however, constitute a basis for estoppel, even though such conduct be violative of statutory law, unless somebody is thereby misled into exposing himself to injury. 2 C. J., p. 464 et seq.; 10 R. C. L., 697; 21 C. J., secs. 205 et seq. Estoppel is never employed as a means of inflicting punishment for an unlawful or wrongful act. Notwithstanding the conduct of the Motor Company, in the respects mentioned, is made a crime by provisions of our Penal Code, an estoppel does not arise. Plainly, if Isaacs had survived, he could not have invoked an estoppel against a showing that the Motor Company was not responsible for the negligent acts of Simpson. For it could not be said, of course, that Isaacs suffered injury in reliance on the ostensible purpose for which the automobile was being operated by Simpson.

■ Passing to the consideration of the second certified question, a conflict of authorities in an important respect is encountered. It has been held in Massachusetts, in effect, that the operation of an automobile on a public highway, without the required license plates attached, constitutes a nuisance in violation of the rights of other travellers upon the highway. This ruling rests primarily on the doctrine, entertained by the courts of that State, that the use of license plates on automobiles is required for the protetction of other travellers, and that the operator of an unregistered automobile, or of one without the requir-

ed license plates attached, is, so far as other travellers are concerned, an outlaw, except in respect of injuries wantonly inflicted upon him. But this rigorous doctrine has been repudiated in this State, as well as most other states where it has come under consideration. St. Louis, B. & M. Ry. v. Price (Com. App.), 269 S. W., 422; 1 Berry on Automobiles (6th Ed.), secs 279 et seq. In the light of well established principles of law, we are unwilling to hold that the unlawful conduct of the Motor Company effected a curtailment of its civil rights, in relation to other private individuals, or exposes the Company to liability for injuries which did not proximately result from said unlawful conduct. That the act of the Company in permitting Simpson to drive the automobile, on the public highways, with the dealer's license plate attached to the vehicle, was not the proximate cause of Isaac's death is too plain for argument. The accident would have occurred just as it did, if the automobile had belonged to Simpson, and had carried any other license plate, or no license plate at all. The act of the Motor Company in permitting Simpson to use the automobile but remotely contributed to the accident by creating a condition in which the unforseen negligence of Simpson operated as the efficient cause of the collision.

■ The various provisions of our statutes, which relate to the use of license plates on automobiles, disclose no legislative purpose to prevent collisions on the public highways. The safety of travellers on the highways is plainly not the object at which those provisions aim. They do not purport to extend protection to persons using the public highways. In disobeying those provisions, the Motor Company did not violate any duty which it owed to Isaacs or to any other traveller on the public highways.

We recommend that both certified questions be answered "No."

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

C. M. CURETON, Chief Justice.